UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAQUETTA COOPWOOD,

    Plaintiff,

v.                                                                    Case No. 20-12092
                                                                 Honorable Victoria A. Roberts

COUNTY OF WAYNE ET AL.,

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [ECF 5]

### I. Introduction

Jaquetta Coopwood ("Coopwood") filed a civil rights action against defendants – the County of Wayne ("Wayne County") and Sgt. Deputy Jonith Watts ("Watts") – alleging official misconduct. Coopwood says Watt used excessive force on her and injured her. She also says Wayne County failed to properly treat her injuries. At the time of the alleged excessive force, Coopwood was pregnant. Coopwood alleges that her injuries caused her to miscarry.

In their motion to dismiss, defendants contend that Coopwood failed to exhaust administrative remedies.

The Court **GRANTS** defendants' motion to dismiss.

1

## II. Background

On August 13, 2017, Wayne County took Coopwood into custody for second-degree murder and placed her at the Wayne County jail. She was approximately six months pregnant then. On September 17, 2018, the Wayne County Circuit Court found Coopwood guilty of second-degree murder. Coopwood is serving an 18-year sentence at the Women's Huron Valley Correctional Facility.

Coopwood alleges that on August 17, 2017, while she was a pre-trial detainee at the Wayne County jail, she walked to the deputy desk in her unit and asked Deputy Watt if she could use the phone to contact her sister. Coopwood alleges that when she asked Watt this question, Watt grabbed her right hand, bent it back, and dragged her back to her cell by her fingers and hair, and kicked her in the stomach. Coopwood alleges that other Wayne County jail officials witnessed this alleged assault.

Coopwood complained to jail officials for a couple days about a throbbing pain she experienced from their alleged assault. In particular, Coopwood experienced bloody discharge from her vagina. Coopwood's condition did not improve, and she was taken to Hutzel Hospital in Detroit around August 19, 2017. While at Hutzel, doctors discovered that

Coopwood's unborn fetus was in critical condition. Coopwood remained in the hospital for a day or two before being discharged. After subsequent visits to the hospital, it was determined that her pregnancy had to be terminated.

### III. Legal Standard

Defendants do not categorize their motion to dismiss as either a 12(b)(6) or a summary judgment motion.

"The federal rules require that if, in a 12(b)(6) motion to dismiss, 'matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.'" *Wysocki v. International Business Machine Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010); *see also* FED. R. CIV. P. 12(d). "The summary judgment motion is especially well suited to pretrial adjudication of an exhaustion defense, because proof of lack of exhaustion generally requires resort to matters outside the pleadings, such as affidavits or documentary evidence." *Anderson v. Jutzy*, 175 F.Supp.3d 781, 787 (E.D. Mich. 2016).

Defendants' motion to dismiss contains an affidavit from a jail official, and the Wayne County Jail Operation's Manual. Both exhibits are introduced to show that Coopwood did not exhaust available administrative

3

remedies. Consequently, the Court construes defendants' motion to dismiss as one for summary judgment.

Under Federal Rule of Civil Procedure 56(a), "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial burden to inform the Court of the basis for her motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies her burden, the non-moving party must set forth specific facts showing a genuine issue for trial. *Id*. at 324. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Unsupported, conclusory statements are insufficient to establish a factual dispute to defeat summary judgment, as is the mere existence of a scintilla of evidence in support of the non-movant's position; the evidence must be such that a reasonable jury could find in its favor. *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court "views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court only needs to consider the cited materials, but it may consider other evidence in the record. Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

## IV. Analysis

Under the Prison Litigation Reform Act ("PLRA"), a prisoner cannot bring an action challenging prison conditions unless she exhausts administrative remedies. 42 USC § 1997e(a). "This requirement is not jurisdictional; rather, exhaustion is an affirmative defense that must be pleaded and proved by the defendants." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017). Claims of excessive force must be exhausted. *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought into court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Generally, inmates must exhaust through their

5

prison's comprehensive grievance process. The prison's process determines when and if a prisoner has properly exhausted her claim. *Id*. at 218.

The Wayne County jail grievance process is that inmates must file a grievance: (1) for alleged violations of civil rights or statutory laws; (2) alleged violations of the Sheriff's Office policy; (3) to appeal a disciplinary decision, and (4) for alleged unsafe and unsanitary living conditions. *Wayne County Jail Operations Manual Document No: 7.1*. The Wayne County policy defines a grievance as "[a] written complaint filed by an inmate concerning personal health and safety or the operation and services of the facility." *Id*. If an inmate is unable to resolve her complaint through informal contact with staff, she must obtain an "Inmate Grievance Form," and submit the form within 10-days from the date of the alleged incident of complaint. The inmate must sign the grievance form and give it to a staff person. Inmates are provided with this grievance procedure during their intake process. It is undisputed that Coopwood was provided with the details of the grievance procedure during intake.

**A. Exhaustion for Complaint of Excessive Force**

Coopwood argues that "it is clear that [she] filed her grievance related to the incident with Sgt. Watt and her need for medical care immediately after the incident happened. Her medical condition did not improve so she continued to complain, and was taken to the hospital a few days later where she received medical treatment…" [ECF No. 16; PageID. 106].

Coopwood erroneously argues that her oral complaints to jail staff about her pain from the alleged assault constitute a grievance. Oral complaints are not a grievance as defined in the Wayne County jail manual. Wayne County's grievance procedure requires the inmate to file a written grievance and submit it to a staff member.

Coopwood also argues that she filed another grievance when her sister asked the Wayne County jail how Coopwood lost her unborn child. Coopwood says, "there is little doubt that Plaintiff and her sister substantially complied with the grievance procedures of the jail." [ECF No. 16; PageID. 107]. Again, Coopwood erroneously asserts that oral complaints and inquiries satisfy the Wayne County jail grievance procedure. But the grievance process makes no mention of third-party inquiries as an approach to satisfy an inmate's exhaustion requirement.

Defendants bear the initial burden of production and persuasion on the issue of exhaustion. *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

Defendants claim there is no record of Coopwood filing a written grievance in accordance with the jail grievance process. In support of their claim, defendants submitted a signed affidavit from the Director of Internal Compliance for the Wayne County Sheriff's Office stating that the Wayne County jail has no record of a Coopwood grievance regarding alleged assaultive behavior by Sgt. Watt. The absence of such a record is consistent with Coopwood's argument, since she does not claim that she ever filed a written grievance. Instead, Coopwood relies on her oral complaints to the officers as a grievance.

"An inmate exhausts a claim by taking advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (citing *Woodford v. Ngo*, 548 U.S. 81, 95 (2006).

Coopwood did not do this. Oral complaints and inquiries do not equate to a grievance for purposes of exhaustion. It would be difficult for prison systems to confirm and investigate all oral complaints if they were construed as grievances.

The Court finds that Coopwood failed to exhaust administrative remedies.

**B. Mental Capacity Exception to the Exhaustion Requirement**

The PLRA requires a prisoner to exhaust administrative remedies that are available to her. 42 U.S.C. § 1997e(a).

The Court entered an order requesting that the parties file supplemental briefs addressing whether the Wayne County jail grievance process was "available" to Coopwood given her alleged history of mental health impairments. In Coopwood's response to defendants' motion to dismiss she states that she has been diagnosed with bipolar schizophrenia, and prescribed a variety of medications and therapeutic interventions to treat or alleviate mental health issues.

Plaintiff relies on *Braswell v. Corrections Corp. of America*, 419 F.Appx. 622 (6th Cir. 2011) which held that a prisoner's mental impairments may render administrative remedies unavailable to the prisoner,

consequently excusing the prisoner from the grievance process. *Id*. at 625-26.

Coopwood argues that the grievance process was not available to her because: (1) she had a history of serious psychiatric conditions, including bipolar schizophrenia; (2) Coopwood submitted an affidavit and testified that she was taken off her medications because of her pregnancy, which greatly affected her mental health and ability to understand or process information; (3) she was housed in the psychiatric unit of the Wayne County jail during her incarceration; and (4) she was taken to DMC Hospital for several days following the alleged assault. Although Coopwood's supplemental briefing is contrary to Coopwood's position in her complaint and responsive briefing that she properly filed a grievance, the Court considers whether the grievance process was unavailable to Coopwood because of her mental health issues.

Defendants' supplemental brief contends that the PLRA does not contain a mental capacity exception. In support of this position, defendants cite to *Williams v. White*, 724 Fed.Appx. 380 (6th Cir. 2018). *Williams* held "there is no mental-capacity exception to the PLRA." *Id*. at 383.

10

In *Williams*, the prisoner brought a 42 U.S.C. § 1983 action seeking damages for his time in solitary confinement without first filing a grievance. *Id*. 382. The district court dismissed his § 1983 action because he failed to exhaust available administrative remedies. The prisoner argued that the grievance process was unavailable to him due to his mental impairments. The Sixth Circuit concluded that "administrative remedies are not 'available' in a practical sense if the remedial process is 'so opaque' that 'no ordinary prisoner can make sense of it'". *Id*. at 383 (citing *Ross v. Blake*, 578 U.S. 632, 644 (2016)). However, if ordinary prisoners can make sense of the remedial process, it is available notwithstanding a prisoner's mental capacity. *Id*.

Although it does appear that in *Braswell* the Sixth Circuit held that a prisoner's mental capacity may raise a genuine dispute as to whether the grievance process was available to that prisoner, the plain language in *Williams* seems to overturn that earlier decision. *Braswell,* a 2011 decision, predated the Supreme Court's *Ross v. Blake* decision in 2016. *Ross* expressly precluded "a 'special circumstances' exception to [PLRA's] rule of exhaustion." *Ross*, 578 U.S. at 641. The rationale for this preclusion is that courts could "look to all the particulars of a case to decide whether to excuse

11

a failure to exhaust available remedies." *Id*. *Williams,* a 2018 case, relies on *Ross'*s prohibition against carving out special exceptions to the PLRA.

*Williams* seems most logical. Some cognitive impairments are more severe than others. In fact, the Court does believe there are certain impairments that would render a prisoner incapable of understanding a prison grievance process. On the other end of the spectrum, an overarching mental capacity exception would permit a prisoner with the slightest impairment to bypass the grievance process in its entirety and immediately seek relief from the federal judiciary. The Court finds it difficult to draw the line between those impairments that would give rise to an exception from the exhaustion requirement and those impairments that do not rise to that level.

The Court agrees with defendants. *Williams* supersedes *Braswell.* Coopwood fails to address *Williams* in her supplemental briefing.

Coopwood's alleged mental defects did not render the Wayne County jail's grievance process "unavailable" to her. Moreover, Coopwood does not claim that the exhaustion process is so opaque that no ordinary prisoner can make sense of it. The Court interprets the Wayne County jail's exhaustion process to be understandable to the ordinary prisoner.

Coopwood's final argument as to why the grievance process was unavailable to her is that she was taken to DMC Hospital for several days following the assault. She suggests she was not able to file a written grievance within ten days of the alleged assault because she was hospitalized.

Coopwood was at the DMC Hospital for two days during the grievance filing period. Even after the 10-day period lapsed, Coopwood never filed a grievance. The Court believes that if Coopwood did file a grievance at some point and there was an issue as to the timeliness of the filing, the Court would then need to consider whether her absence from the jail necessitated an extension to file a grievance. That is not the case here. From August 17, 2017, when the alleged assault occurred, to October 5, 2018, when the Wayne County Court sentenced Coopwood, there is no indication that Coopwood filed a grievance. She had over a year to reduce her allegations to writing and failed to do so. Additionally, there is no mention in Coopwood's pleadings or supplemental briefing that she sought assistance during this period to file a grievance.

## V. Conclusion

Coopwood failed to exhaust available administrative remedies in accordance with the Wayne County jail grievance process. She is precluded from bringing a federal claim. 42 U.S.C. § 1997e(a). The Sixth Circuit does not recognize a mental capacity exception that would render the process unavailable to her.

Construing defendants' motion to dismiss as one for summary judgment, the Court finds there are no genuine issues of material fact.

The Court **GRANTS** defendants' judgment as a matter of law.

**IT IS ORDERED.**

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  3/28/2022