# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: July 17, 2023

Ms. Easha Anand
The Roderick & Solange MacArthur Justice Center
2443 Fillmore Street
Unit 380-15875
San Francisco, CA 94115-1814

Ms. Rosalind Eileen Dillon
Roderick & Solange MacArthur Justice Center
160 E. Grand Avenue
Sixth Floor
Chicago, IL 60611

Mr. Felipe De Jesus Hernandez
Roderick & Solange MacArthur Justice Center
501 H Street, N.E.
Suite 275
Washington, DC 20002

Mr. Conrad Hester
Alston & Bird
301 Commerce Street
Suite 3635
Ft. Worth, TX 76102

Mr. Daniel S. Korobkin
ACLU Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201

Mr. Kevin Aaron Landau
Landau Law
38500 Woodward Avenue
Suite 310

Bloomfield Hills, MI 48304

Ms. Meaghan Nowell
Alston & Bird
301 Commerce Street
Suite 3635
Ft. Worth, TX 76102

Mr. Davidde A. Stella
Wayne County Corporation Counsel
500 Griswold Street
30th Floor
Detroit, MI 48226

Ms. Jennifer Wedekind
American Civil Liberties Union
915 15th Street, N.W.
7th Floor
Washington, DC 20005

      Re: Case No. 22-1485, *Jaquetta Coopwood v. Wayne County, MI, et al*
         Originating Case No. : 2:20-cv-12092

Dear Counsel,

 The court today announced its decision in the above-styled case.

 Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

            Yours very truly,

            Deborah S. Hunt, Clerk


            Cathryn Lovely
            Deputy Clerk

cc: Ms. Kinikia D. Essix

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0153p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

JAQUETTA ANN COOPWOOD,

    *Plaintiff-Appellant*,

*v.*

WAYNE COUNTY, MICHIGAN; JONITH WATTS, Sergeant,

    *Defendants-Appellees*.

No. 22-1485

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:20-cv-12092—Victoria A. Roberts, District Judge.

Argued: May 1, 2023

Decided and Filed: July 17, 2023

Before: GILMAN, READLER, and MATHIS, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Felipe De Jesús Hernández, RODERICK AND SOLANGE MACARTHUR JUSTICE CENTER, Washington, D.C., for Appellant. Davidde A. Stella, WAYNE COUNTY CORPORATION COUNSEL, Detroit, Michigan, for Appellee. **ON BRIEF:** Felipe De Jesús Hernández, RODERICK AND SOLANGE MACARTHUR JUSTICE CENTER, Washington, D.C., Kevin A. Landau, THE LANDAU GROUP, PC, Bloomfield Hills, Michigan, David Shapiro, NORTHWESTERN UNIVERSITY, Chicago, Illinois, Rosalind E. Dillon, RODERICK AND SOLANGE MACARTHUR JUSTICE CENTER, Chicago, Illinois, Easha Anand, RODERICK AND SOLANGE MACARTHUR JUSTICE CENTER, San Francisco, California, for Appellant. Davidde A. Stella, WAYNE COUNTY CORPORATION COUNSEL, Detroit, Michigan, for Appellee. Jennifer Wedekind, AMERICAN CIVIL LIBERTIES UNION, Washington, D.C., Daniel S. Korobkin, AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN, Detroit, Michigan, Meaghan D. Nowell, Conrad D. Hester, ALSTON & BIRD LLP, Fort Worth, Texas, for Amici Curiae.

---

# OPINION

---

RONALD LEE GILMAN, Circuit Judge. Jaquetta Ann Coopwood was around six-months pregnant and incarcerated in the Wayne County Jail (the Jail) when she was allegedly kicked in the stomach by Deputy Jailer Jonith Watts. After losing her child in a stillbirth, Coopwood brought suit against Watts and Wayne County (collectively, Defendants). The district court found that Coopwood, despite having a documented history of severe mental illness, had not exhausted her available administrative remedies under the Prison Litigation Reform Act (PLRA). It therefore granted summary judgment in favor of Defendants based on this procedural deficiency. For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Factual background

Coopwood has a history of mental illness dating back to at least 2008, when, after experiencing multiple episodes of psychosis, she was diagnosed with bipolar disorder and schizophrenia. She was institutionalized several times between 2010 and 2017.

On August 13, 2017, Coopwood (then around six-months pregnant) stopped taking her antipsychotic medications because of her concern about the drugs' potential effects on the fetus. This decision had serious consequences. As Coopwood stated in her affidavit, "[w]hen I am taken off my psychiatric medications, my mental illness impairs my judgment and ability to understand or process information."

Indeed, on that same day in August 2017, Coopwood fatally stabbed her mother in an argument over a pack of cigarettes. Coopwood was ultimately found "guilty but mentally ill" with regard to the charge of second-degree homicide, a disposition that required her to have "proven by a preponderance of the evidence that [she] was mentally ill at the time of the commission of [her] offense." Mich. Comp. Laws § 768.36.

After entering pretrial custody at the Jail on August 17, 2017, Coopwood underwent a medical screening conducted by Wellpath, an entity under contract with the Jail to provide healthcare services. Coopwood, who was still not taking her antipsychotic medications, denied any history of psychiatric hospitalization or mental-health treatment. The Wellpath employee, who was aware of Coopwood's history of inpatient psychiatric care, did not raise concerns about the inconsistency. The evaluation noted only that Coopwood had a "blunted" affect and "depressed" mood.

Coopwood alleges that, on the same date, Watts assaulted her, ultimately leading to the present litigation. According to Coopwood, when she asked Watts for assistance in calling her sister, Watts "grabbed [Coopwood's] right hand, bent it back, and dragged her back to her cell by both the fingers and hair." Watts allegedly also kicked Coopwood in the stomach. Coopwood contends that she "was in severe pain after being kicked and dragged by Watt[s]" and suffered "cramping on the right side, with a bloody discharge from her vagina." She was not seen by a physician.

The next day, Coopwood participated in a behavioral evaluation. Coopwood divulged that she had been diagnosed with "insomnia and . . . depression," but claimed that she "kinda got over that." She again denied a history of psychiatric hospitalization. Although the Wellpath employee was aware that Coopwood's self-reporting contradicted her medical records, the evaluation concluded that "[n]o interventions [were] needed at this time." Coopwood was prescribed an antidepressant and placed in the Jail's psychiatric unit. She was not, however, referred to a licensed psychiatrist or prescribed the antipsychotic medications that she had been taking prior to her incarceration.

Over the following days, Coopwood continued to complain to Jail officials of throbbing pain and bloody discharge from her vagina. She was repeatedly hospitalized, including on August 23, August 30, and September 27.

On September 28, Coopwood participated in another behavioral assessment. The Wellpath employee again took Coopwood at her word that she had no history of psychiatric hospitalization, violent behavior, or even outpatient mental-health treatment. No antipsychotic

medications were prescribed.

Coopwood returned to the hospital on October 19, claiming that her water had broken and complaining of continued vaginal pain. At the hospital, for the first time since entering the Jail, Coopwood received a thorough evaluation from an independent, licensed psychiatrist. Her water had not broken, but she was scheduled for an "urgent OB visit" in the next three to five days.

The psychiatrist, Dr. Luay Haddad, determined that Coopwood had been "psychotic for [an] unknow[n] period [of] time." Dr. Haddad also reported that Coopwood seemed to be unaware of her present circumstances: "[S]he does not know why she is in police custody, . . . [she] says she tripped and fell and someone else got hurt and [the] neighbors called the police, she says that the judge dropped the charges . . . ." The doctor's notes state that Coopwood presented as "bizarre" and "dramatic," and he characterized Coopwood's thinking as "seriously derailed and internally inconsistent, resulting in irrelevancies and disruption of thought processes." Dr. Haddad further observed that Coopwood's "hallucinations are frequent and tend to distort thinking and/or disrupt behavior." He also noted that Coopwood had "a delusional interpretation" of her hallucinations and "responds to them emotionally and, on occasion, verbally as well."

Dr. Haddad concluded that Coopwood had no insight and poor judgment, and he diagnosed her with "psychosis NOS [not otherwise specified], possible schizophrenia," "personality disorders[,] and mental retardation." In light of Coopwood's mental state, Dr. Haddad resumed Coopwood's regime of antipsychotic medications notwithstanding the risks to the fetus.

On October 22, Coopwood returned to the hospital. Coopwood continued to exhibit bizarre behavior, allegedly kicking the medical staff and accusing them of sexual assault. Her physicians urged her to allow them to induce labor and discouraged an early discharge from the hospital. When Coopwood proved unamenable to their advice, they consulted Dr. Haddad to evaluate Coopwood's "ability to make medical decision[s] regarding [her] pregnancy."

Dr. Haddad concluded that Coopwood "was not competent and appear[ed] to continue being psychotic." Coopwood was shackled and forcibly given antipsychotic medications. Because Coopwood was classified as incompetent, her physicians planned to induce labor in the event of "maternal/fetal indications" notwithstanding Coopwood's lack of consent. She was discharged on October 23 for reasons that are unclear from the record.

Coopwood was readmitted to the hospital on November 8, reporting that she had not felt her baby move in four days and was experiencing contractions. Dr. Haddad recommended that Coopwood's physicians administer another dose of antipsychotic medications. He concluded that only after receiving these medications would Coopwood be competent to consent to medical procedures, and only if she was "able to verbalize [the] risks/benefits" of those procedures. Labor was eventually induced, but Coopwood's baby was stillborn.

During this period of significant mental and physical trauma, the Jail expected Coopwood to fully comply with its grievance procedures. Coopwood contends that she tried to do so, alleging that even though she does not recall "receiving any forms related to time constraints or other requirements relative to filing an internal grievance," she "asked to speak to whoever was in charge, and they wouldn't let [her]." Her request was reportedly denied, but "after additional complaints, [she] did fill out some type of paper, which [she] believe[s] they told [her] was a grievance form." Coopwood does not "remember the name of the officer or guard who took her complaint, but it was to a [sergeant] on the 5th floor with the Psychiatric Unit." She does "not believe anything came of [her] grievance," and Defendants have no record of a grievance being filed by Coopwood.

**B. Procedural background**

On August 4, 2020, Coopwood filed an action in the Eastern District of Michigan against Wayne County and Watts. Coopwood alleged that Defendants had used excessive force and were deliberately indifferent to her medical needs, resulting in the stillbirth of her child. She also filed a Michigan state-law claim for gross negligence. Defendants filed a motion to dismiss, alleging that Coopwood had not exhausted her available administrative remedies under the PLRA, 42 U.S.C. § 1997e.

The district court ordered supplemental briefing on the issue of whether "Ms. Coopwood's mental and physical impairments rendered Wayne County Jail's administrative remedy unavailable to her, and thus excused her obligation to exhaust under the PLRA." Following the death of District Judge Arthur J. Tarnow, who had ordered the supplemental briefing, newly assigned District Judge Victoria A. Roberts construed Defendants' motion to dismiss as one for summary judgment because both parties relied on evidence outside of the complaint. Judge Roberts granted Defendants' motion on the basis that "[t]he Sixth Circuit does not recognize a mental capacity exception [to the PLRA's exhaustion requirement] that would render the [Jail's grievance] process unavailable" to Coopwood.

Coopwood filed a motion for reconsideration, which the district court denied. She now appeals.

## II. ANALYSIS

### A. Defendants' efforts to preclude Coopwood's arguments on technical grounds are unavailing

#### *1. We may consider the excerpts of Coopwood's medical records that Defendants designated before the district court, as well as arguments premised on those records*

As a threshold matter, Defendants argue that Coopwood is precluded from relying on the medical records that were generated by Coopwood's healthcare providers during the relevant period. Defendants claim that by considering any argument premised on these records (including that Coopwood's "mental illness was so severe that it prevented her from pursuing the grievance process"), we would in effect permit Coopwood to "press legal arguments and factual contentions on appeal that were not first presented to the district court."

This contention is without merit. After receiving briefing from both parties on Defendants' motion to dismiss, the district court remarked that the facts alleged by Coopwood, if true, would "suggest [that] Ms. Coopwood was suffering from serious mental impairments during the ten-day period in which she would have been required to file a grievance," "rais[ing] doubts about whether the administrative process was truly 'available' to her." In particular, the court observed that Coopwood allegedly "ha[d] been repeatedly hospitalized because of [her

mental-health] challenges," that she "had been off her medication and in this impaired state for three days when she was taken to jail," and that "she remained off her medications throughout the ten-day period during which Wayne County Jail's policy would have required her to file a grievance."

The district court therefore specifically ordered the parties to file "supplemental briefs addressing whether Ms. Coopwood's mental and physical impairments rendered Wayne County Jail's administrative remedy unavailable to her, and thus excused her obligation to exhaust under the PLRA." Coopwood argued in response that "the deterioration of [her] mental and physical state" left "substantial doubt as to whether [she] was even mentally (or physically) capable of filing a grievance."

Turning to the consideration of documents related to Coopwood's medical history, "we look at [the] record in the same fashion as the district court." *See Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992) (quoting *Est. of Mills v. Trizec Props.*, 965 F.2d 113, 115 (6th Cir. 1992) (alteration in original)). In summarizing each of Coopwood's medical and psychiatric appointments during the relevant period, Defendants directed the district court's attention to the very excerpts of the record upon which Coopwood now relies. Defendants continue, in fact, to rely on them before this court. The portions of the record at issue here were thus presented below "with enough specificity that the district court c[ould] readily identify" the relevant facts. *See id.* at 405 (quoting *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)).

Defendants argue that Coopwood is nonetheless precluded from relying on the portions of her medical records that Defendants designated before the district court because Coopwood herself did not specifically cite to them below. But in evaluating a motion for summary judgment, the district court could neither "overlook the possibility of evidentiary misstatements presented by the moving party" nor fail to consider "reasonable inferences . . . apparent from the designated evidence and favorable to the non-moving party." *Id.* at 407. The district court was therefore not free to disregard the genuine disputes of material fact that were raised by Defendants' own submissions. This is especially so because, in raising the affirmative defense of nonexhaustion, Defendants had the burden of proving "that the[ir] evidence [wa]s so

No. 22-1485 *Coopwood v. Wayne County, Mich., et al.* Page 8

powerful that no reasonable jury would be free to disbelieve it." *See Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012) (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Coopwood's reliance on the excerpted medical records is accordingly proper.

### 2. Because Coopwood argued below that the Jail's staff refused to provide her with the requisite grievance forms, she may raise the same argument on appeal

Defendants also argue that because Coopwood "raised no coherent argument before the District Court that the Wayne County Jail's staff 'thwarted' her attempts to file a grievance," "she has forfeited it for the purposes of this appeal." In fact, although the Jail's written procedures specify that Coopwood was to have been provided on intake with a blank grievance form, Coopwood alleged in her response to Defendants' motion to dismiss that she "do[es] not remember receiving any forms in general, and certainly do[es] not recall receiving any forms related to time constraints or other requirements relative to filing an internal grievance with the jail."

She further stated that she "asked to speak to someone about the altercation [with Watts], and [her] desperate need for medical attention." But when she "asked to speak to whoever was in charge, . . . they wouldn't let [her]." Only after "additional complaints" was Coopwood able to "fill out some type of paper, which [she] believe[s] they told [her] was a grievance form." Coopwood "do[es] not believe anything came of [her] grievance." And in her supplemental brief before the district court, Coopwood again argued that "there is substantial doubt as to whether [she] . . . had access to the necessary forms and information." Because Coopwood squarely raised before the district court the argument that Defendants thwarted her attempts to comply with the Jail's grievance process, she may so argue before this court.

### B. The district court erred in granting summary judgment on failure-to-exhaust grounds because Defendants failed to establish the absence of a genuine dispute of material fact as to whether the Jail's staff thwarted Coopwood's attempts to exhaust her administrative remedies

Turning now to the merits of the issue before us, the PLRA's exhaustion requirement "hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Does 8-10 v. Snyder*, 945 F.3d 951,

Case 2:20-cv-12092-LVP-DRG ECF No. 49-2, PageID.393 Filed 07/17/23 Page 11 of 15 (11 of 15)

No. 22-1485          Coopwood v. Wayne County, Mich., et al.          Page 9

962 (6th Cir. 2019) (alteration in original) (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)). This "textual exception" has "real content." *Ross*, 578 U.S. at 642. Specifically, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). A court considering the availability of administrative remedies, moreover, does not fulfill its responsibility when it simply "state[s] that standard." *Id.* at 643. Instead, a court must evaluate the availability of prison grievance mechanisms "in practice." *Does 8-10*, 945 F.3d at 963.

The Supreme Court in *Ross* held that administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-44. In the present case, substantial doubt exists as to whether the Jail's grievance procedures were available to Coopwood because the Jail's staff allegedly thwarted her attempts to exhaust her administrative remedies. As Coopwood points out in her brief, "[t]hese obstructions," which "would make remedies unavailable to someone *without* a serious mental illness," "rendered the grievance system even more impassable" for Coopwood. (emphasis in original). The district court nonetheless concluded that Coopwood's "oral complaints and inquiries" were insufficient to exhaust her administrative remedies, without considering whether the responses—or lack thereof—to Coopwood's inquiries rendered those remedies unavailable to her.

Coopwood also challenges the district court's "undisputed" finding that "she was provided with the details of the grievance procedure during the intake." The Jail's operations manual requires the Jail's staff to, "[a]s part of the orientation process, . . . explain the grievance process to all inmates, provide them with an Inmate Rules and Regulations Handbook, and have the inmate sign the Grievance Process Form." But Coopwood "do[es] not remember receiving any forms in general, and certainly do[es] not recall receiving any forms related to time constraints or other requirements relative to filing an internal grievance within the jail." And Cierra Crawford, a Jail employee whose "duties include maintaining and supervising the Inmate Grievance Process," and who provided an affidavit in this case, noticeably made no assertion that

Case 2:20-cv-10521-LVP-DRG ECF No. 292, PageID.3941 Filed 07/17/23 Page 12 of 15
Case: 22-1485 Document: 49-2 Filed: 07/17/2023 Page: 12 (12 of 15)

No. 22-1485 Coopwood v. Wayne County, Mich., et al. Page 10

her office has a record of Coopwood signing the Grievance Process Form that should have been provided to her at intake.

Despite the Jail's alleged failure to comply with its own operations manual, Coopwood contends that she attempted to settle her grievance internally. Coopwood alleges that she "asked to speak to someone about the altercation [with Watts], and [her] desperate need for medical attention. [She] asked to speak to whoever was in charge, and they wouldn't let [her]." Coopwood thus claims a lack of access to the "necessary forms and information" to comply with the Jail's grievance procedures. And such an alleged lack of access was fatal to her ability to properly file a grievance because the Jail "will not accept grievances that are not on the [official Wayne County Jail Grievance Form]."

Jail employee Crawford's statement that the Jail's search of its records yielded "no record of Plaintiff filing a grievance" is hardly the evidence that is "so powerful that no reasonable jury would be free to disbelieve it" in support of grievance availability that this court requires for Defendants to prevail. *See Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012) (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Indeed, Crawford's statement is not inconsistent with Coopwood's position because, if the Jail's employees thwarted Coopwood's efforts to file a grievance by refusing to provide her with the necessary form, then the Jail would obviously have no record of Coopwood submitting that form.

This court has held that "administrative remedies are not 'available' if prison employees refuse to provide inmates with necessary grievance forms when requested." *Lamb v. Kendrick*, 52 F.4th 286, 297 (6th Cir. 2022). "Therefore, if the assertions in [Coopwood]'s sworn affidavit are true, they would at least create a dispute of fact regarding whether prison officials at [the Jail] failed to follow their own procedures and thwarted h[er] affirmative efforts to comply." *See id.*

**C. Because we have concluded that summary judgment was not warranted, we need not address Coopwood's alternative argument that her mental illness rendered the Jail's grievance process unavailable to her**

Coopwood alternatively argues that the symptoms of her mental illness during the period in question rendered the Jail's grievance process unavailable to her. Our circuit has no published opinion on whether the availability of remedies under the PLRA requires an analysis of an

Case 2:20-cv-12092-LVP-DRG ECF No. 42, PageID.395 Filed 07/17/23 Page 13 of 15 (13 of 15)

No. 22-1485   Coopwood v. Wayne County, Mich., et al.   Page 11

inmate's individual capacities, but we have, in unpublished opinions, confronted the issue. *See Braswell v. Corrs. Corp. of Am.*, 419 F. App'x 622, 625 (6th Cir. 2011) (affirming the district court's determination that "there [was] substantial doubt as to whether [the inmate] was mentally capable of filing a grievance" because "'[o]ne's personal inability to access the grievance system could render the system unavailable'" (quoting *Days v. Johnson*, 322 F.3d 863, 867 (5th Cir. 2003), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007))); *Williams v. White*, 724 F. App'x 380, 383 (6th Cir. 2018) ("[T]here is no mental-capacity exception to the PLRA."); *see also Doss v. Corizon Med. Corp.*, 2022 WL 1422805, at *2 (6th Cir. Mar. 15, 2022) (order) ("[N]ot consider[ing]" a forfeited argument as to mental capability, but nonetheless noting that, "in contrast" to *Braswell*, "there [was] no evidence that [the inmate] had any mental-acuity issues that prevented him from filing a grievance, and he in fact did pursue the grievance process").

Several of our sister circuits, however, have addressed this question in published opinions and have answered in the affirmative. *See Rucker v. Griffen*, 997 F.3d 88, 94 (2d Cir. 2021) (concluding that a grievance procedure was unavailable to an inmate who could not comply with its terms due to his medical condition); *Days*, 322 F.3d at 867 ("[O]ne's personal inability to access the grievance system could render the system unavailable."); *Smallwood v. Williams*, 59 F.4th 306, 314 (7th Cir. 2023) ("[W]hen assessing whether the grievance process could have been understood by a particular prisoner, the inquiry must consider individual capabilities. . . . [W]e have made clear that a remedy that is available to the majority of inmates may not be available to those who are illiterate, blind, or whose individual circumstances otherwise render the procedures unavailable to them." (citations omitted)); *Eaton v. Blewett*, 50 F.4th 1240, 1245 (9th Cir. 2022) ("The PLRA's exhaustion requirement extends only to available administrative remedies . . . . The critical question, here, is whether 'there is something in [the inmate's] particular case that made the existing and generally available administrative remedies effectively unavailable to [him].'" (third alteration in original) (quoting *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc))). We need not presently decide this issue, however, because a genuine dispute of material fact exists with respect to whether the Jail's staff thwarted Coopwood's attempts at exhaustion.

## III. CONCLUSION

For all of the foregoing reasons, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 22-1485

JAQUETTA ANN COOPWOOD,

    Plaintiff - Appellant,

  v.

WAYNE COUNTY, MICHIGAN; JONITH WATTS, Sergeant,

    Defendants - Appellees.

**FILED**
Jul 17, 2023
DEBORAH S. HUNT, Clerk

Before: GILMAN, READLER, and MATHIS, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THIS CASE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with the opinion of this court.

                                      ENTERED BY ORDER OF THE COURT

                                      Deborah S. Hunt, Clerk