UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAQUETTA COOPWOOD,

           Plaintiff,

                              Case No. 20-cv-12092

v.                              Honorable Linda V. Parker

COUNTY OF WAYNE, and
JONITH WATTS,[1]

           Defendants.

_____/

## ORDER DENYING DEFENDANTS' MOTION FOR EVIDENTIARY HEARING

      This prisoner civil rights action, which Plaintiff Jacquetta Coopwood

brought pursuant to 42 U.S.C. § 1983 on August 4, 2020, has a lengthy procedural

history.  (ECF No. 1.)  Defendants responded to Coopwood's Complaint by filing a

motion to dismiss, arguing that Coopwood did not exhaust her remedies under the

Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA").  (ECF No. 5.)  The

Honorable Victoria A. Roberts, to whom this case was then assigned, granted

---

[1] The Court is sua sponte amending the case caption.  Plaintiff named this
defendant as "Sgt Watt" in the Complaint.  (ECF No. 1.)  Defendants' filings
reflect that this individual's name is "Jonith Watts," and that she was employed as a
deputy, not a sergeant.  (ECF No. 18 at PageID. 136 ("Wayne County did not
employ anyone by the name of "Sergeant Watt" during the time period relevant to
this case.  Wayne County did employ a deputy named "Jonith Watts," who was not
a Sergeant."); ECF No. 14 at PageID. 94 (reflecting that the summons and
Complaint were served on "Jonith Watts").)

Defendants' motion.  (ECF No. 22.)  The Sixth Circuit Court of Appeals reversed, finding genuine issues of material fact on the availability of administrative remedies, and remanded the matter for further proceedings.  (ECF No. 33.)  On remand, the matter was reassigned to the Honorable Paul D. Borman due to Judge Robert's retirement.  Judge Borman subsequently recused himself, however, and the matter was assigned to the undersigned.  (ECF No. 34.)  It is now before the Court on Defendants' motion for evidentiary hearing with respect to PLRA exhaustion.  (ECF No. 30.)

For the reasons stated below, the Court is denying Defendants' motion for evidentiary hearing, and the case will proceed on the merits.

## I.    Procedural History

Coopwood filed this lawsuit against Wayne County and Deputy Jonith Watts alleging the use of excessive force and deliberate indifference to her medical needs ultimately causing the stillbirth of her child.  (ECF No. 1.)  Coopwood also alleges a Michigan state-law claim for gross negligence.  (*Id.*)

On September 30, 2020, Defendants moved to dismiss on exhaustion grounds.  (ECF No. 5.)  The Honorable Arthur J. Tarnow, to whom the case was first assigned, ordered supplemental briefing on the issue of whether "Ms. Coopwood's alleged mental and physical impairments rendered Wayne County Jail's grievance process unavailable to her, thus excusing her from the obligation to

exhaust under the PLRA." (ECF No. 19 at PageID. 302.) After Judge Tarnow's passing, the case was assigned to Judge Roberts. Because both parties relied on evidence outside the Complaint, Judge Roberts construed Defendants' motion to dismiss as one for summary judgment. (ECF No. 22.) On March 28, 2022, Judge Roberts granted Defendants' motion based on her finding that "[t]he Sixth Circuit does not recognize a mental capacity exception [to the PLRA's exhaustion requirement] that would render the [Jail's grievance] process unavailable" to Coopwood. (*Id*.)

Coopwood filed a motion for reconsideration (ECF No. 23), which Judge Roberts denied (ECF No. 25). Coopwood appealed to the Sixth Circuit. (ECF No. 27.) On July 17, 2023, the Sixth Circuit reversed, holding that summary judgment on failure to exhaust grounds was improper because there are genuine issues of material fact relevant to whether Jail staff thwarted Coopwood's attempts to exhaust her administrative remedies. (ECF No. 30); *Coopwood v. Wayne Cnty.*, 74 F.4th 416 (6th Cir. 2023). The Sixth Circuit issued its mandate, remanding the matter for further proceedings, on August 8. (ECF No. 33.)

On remand, Defendants move for a bench trial or evidentiary hearing on the exhaustion issue before the case proceeds to the underlying merits. (ECF No. 37.) Defendants allege that "Plaintiff never attempted to invoke the Jail's grievance process regarding an alleged physical assault by a deputy during her 13-month

3

pretrial detention in the Wayne County Jail" and that "no Wayne County Sherrif's Office ("WCSO") employee ever 'thwarted' any attempt to do so." (ECF No. 37 at PageID. 514; ECF No. 44 at PageID. 586.) In opposition, Coopwood contends that the factual dispute about exhaustion should be decided by a jury and not the court. (ECF No. 40 at PageID. 529.) Coopwood maintains that her claims are not barred by any alleged failure to exhaust administrative remedies because the Jail's staff thwarted her attempts and the remedies were unavailable to her based on her mental incapacity. (*Id.* at PageID. 530.)

## II. Applicable Standards

The PLRA requires that a "prisoner confined in any jail, prison, or other correctional facility" exhaust "such administrative remedies as are available" before bringing an action under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). Failure to exhaust is an affirmative defense under the statute. *Jones v. Bock*, 549 US 199, 216 (2007). Defendants have the burden to plead and prove this affirmative defense by a preponderance of the evidence. *Richards v. Perttu*, 96 F.4th 911, 917 (6th Cir. 2024) (citing *Jones*, 549 U.S. at 204, 212-13).

Importantly, "a prisoner need not exhaust remedies if they are not 'available.'" *Ross v. Blake*, 578 U.S. 632, 636 (2016). An "inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Coopwood*, 74 F.4th at 422

4

(quoting *Ross*, 578 U.S. at 642) (quoting *Booth v. Churner,* 532 U.S. 731, 738 (2001)). The Supreme Court and Sixth Circuit have set forth several examples of ways that a grievance system can be unavailable including "where prison officials are unable or are consistently unwilling to provide relief, administrative schemes are 'so opaque that they become, practically speaking, incapable of use,' or 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[.]'" *Richards*, 96 F.4th at 916- 917 (quoting *Ross*, 578 U.S. at 643-44) (cleaned up).

While the Seventh Amendment to the U.S. Constitution guarantees a right to a jury on the merits of a plaintiff's § 1983 claim, not all factual issues are triable to a jury as a matter of right. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015) (citing *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687 (1999); *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). Exhaustion under the PLRA is similar to other threshold issues of judicial administration that courts must address to determine whether litigation occurs in the right forum and at the right time. *Id.* Thus, "judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." *Id.* at 677 (quoting *Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013)). The Sixth Circuit in *Richards* held that "the Seventh Amendment requires a jury trial when the resolution of the exhaustion issue under

the PLRA would also resolve a genuine dispute of material fact regarding the merits of the plaintiff's substantive case."  96 F.4th at 923.

The Sixth Circuit in *Lee* discussed the court's role in deciding factual issues relating to exhaustion: "disputed issues of fact regarding exhaustion under the PLRA" can be decided by a district court judge at a bench trial or evidentiary hearing, without jury participation.  789 F.3d at 677-78.  The Sixth Circuit has not provided additional guidance for determining when an evidentiary hearing is necessary, however.  Nevertheless, lower courts have determined that a hearing is required to "resolve all genuine issues of material fact related to the exhaustion of administrative remedies."  *Alexander v. Calzetta*, No. 2:16-cv-13293, 2018 WL 8345148 at *6 (E.D. Mich. Nov. 30, 2018); *see also Burfitt v. May*, No. 3:22-cv-00618, 2023 WL 375209, at *2 (N.D. Ohio Jan. 24, 2023) (explaining that, "[s]hould an issue of fact remain [concerning PLRA exhaustion] after the parties' briefing, it will be for [the judge] to resolve through an evidentiary hearing"); *Ayotte v. Stemen*, No. 15-cv-13826, 2018 WL 774148 (E.D. Mich. Feb. 8, 2018) (concluding that "[b]ecause there is a material question of fact as to whether Plaintiff properly exhausted his administrative remedies, a one-day bench trial before the Magistrate Judge is appropriate in this case").[2]

---

[2] "If the plaintiff survives summary judgment on exhaustion, the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary.

## III.   Factual Background

Coopwood has a history of mental illness dating back to 2008, when she was diagnosed with schizophrenia and bipolar disorder.  (ECF No. 16-4 at PageID. 129.)

On August 13, 2017, Coopwood, who was about six months pregnant, stopped taking her anti-psychotic medication out of concern for the effects on the fetus.  (ECF No. 16-2 at Page ID. 114); *Coopwood*, 74 F.4th at 418.  On the same day, Coopwood fatally stabbed her mother at their home.  *Coopwood*, 74 F.4th at 418.  Three days later, she was booked into the Wayne County Jail.  (ECF No. 5-3 at PageID. 37-39; ECF No. 5-6 at PageID. 77.)[3]

On August 17, 2017, Coopwood underwent medical screening by Wellpath, the Jail's medical provider.  (ECF No. 18-2 at PageID. 157.)  Coopwood denied having a history of mental health treatment and hospitalization.  (*Id.*)  The Wellpath evaluator noted that the Jail's medical records dating back to 2012 "state[d] otherwise."  (*Id.*)  The evaluator found that Coopwood's mood was "depressed."  (*Id.*)

---

Then, if the judge determines that the plaintiff has exhausted administrative remedies or that his or her failure to exhaust should be excused, the case may proceed to the merits." *Dillon v. Rogers*, 596 F.3d 260, 273 (5th Cir. 2010).

[3] On September 17, 2018, Coopwood was found "guilty but mentally ill" on the charge of second-degree homicide.  (ECF No. 5-3 at PageID. 39; ECF No. 20-2 at PageID. 329.)

According to Coopwood, on August 17, 2017, Deputy Watts assaulted her. (ECF No. 1 at PageID. 2.)  Coopwood claims she had walked to the desk to ask Deputy Watts to use the phone to contact her sister.  (*Id.*)  Coopwood alleges that after asking this question, Watts "grabbed [Coopwood's] right hand, bent it back, and dragged her back to her cell by both the fingers and hair."  (*Id.* at PageID. 3.) Coopwood contends that Watts kicked her in the stomach, and that other Wayne County jail officials witnessed this alleged assault.  (*Id.*)  Coopwood claims that after this incident, she experienced pain in her abdomen but was not seen by a physician.  (*Id.*)

The following day, Coopwood participated in a behavioral evaluation.  (ECF No. 20-1 at PageID. 320.)  She reported that she was previously diagnosed with "insomnia and … depression" but claimed that she "kinda got over that."  (*Id.*) She reported that she had not been sleeping well.  (*Id.*)  Despite observing that Coopwood's self-reporting contradicted her medical records, the evaluator noted "[n]o interventions needed at this time." Coopwood was placed in the psychiatric unit and prescribed Remeron, an anti-depressant.  (*Id.* at PageID. 322-323, 325.)

On August 23, 2017, after continued complaints to jail officials of pain and bloody discharge, Coopwood was admitted to the hospital.  (ECF No. 18-2 at PageID. 163.)  At the hospital, she was prescribed Tylenol along with ice and hot packs for pain.  (ECF No. 18-2 at PageID. 165; ECF No. 20-1 at PageID. 327.)

8

She was hospitalized again on August 30 and September 27.  (ECF No. 18-2 at PageID. 166-169, 174-175; ECF No. 18-3 at Page ID. 229-63.)

On September 28, 2017, Coopwood participated in a Medical History and Physical Assessment.  (ECF No. 18-2 at PageID. 176-181.)  Again, the evaluator accepted Coopwood's self-reporting about a lack of psychotropic medication, history of psychiatric hospitalization, inpatient and outpatient mental health treatment, and violent behavior.  (*Id.*)  Coopwood was not prescribed any antipsychotic medications.

On October 19, 2017, Coopwood returned to the hospital after complaints of "continued vaginal pain" and concern that her water broke.  (ECF No. 18-3 at PageID. 227-228.)  At the hospital, Dr. Luay Haddad, an independent licensed psychiatrist, evaluated Coopwood.  (*Id.* at PageID. 229-234.)  Dr. Haddad determined that Coopwood had been "psychotic for [an] unknow[n] period of time."  (*Id.* at PageID. 230.)  Dr. Haddad noted that Coopwood presented as "bizzare" and "dramatic."  (*Id.* at PageID. 232.)  He characterized her thinking as "seriously derailed and internally inconsistent, resulting in irrelevancies and disruptions of thought processes."  (*Id.* at PageID. 232.)  He observed that Coopwood's "hallucinations are frequent and tend to distort her thinking and/or disrupt behavior."  (*Id.*)  He determined that she had no insight and poor judgment.  (*Id.* at PageID. 233.)  Dr. Haddad diagnosed her with "psychosis [not otherwise

specified], possible schizophrenia," and "personality disorders and mental retardation." Considering Coopwood's mental condition, Dr. Haddad prescribed a regime of antipsychotic medications recognizing that "the benefits in this case outweigh the risks [to her pregnancy]." (*Id.*)

On October 22, 2017, Coopwood returned to the hospital due to complaints of abdominal cramping. (*Id.* at PageID. 247-249.) Her doctors recommended that labor be induced, and they discouraged discharge from the hospital. (*Id.*) Coopwood exhibited aggressive and psychotic behavior including kicking medical staff and accusing them of sexual assault. (*Id.*) After Coopwood refused their advice to induce labor, the physicians consulted Dr. Haddad to evaluate her "ability to make medical decision[s] regarding [her] pregnancy." (*Id.* at PageID. 251.)

Dr. Haddad concluded, "the patient is not competent and appears to continue being psychotic from her known paranoid and aggressive behavior." (*Id.*) Coopwood was shackled and forcibly given anti-psychotic medications. (*Id.*) Because she was classified as incompetent, the physicians planned to induce labor in the event of "maternal fetal indications" notwithstanding lack of consent. (*Id.*) The next day, despite the physicians' contrary recommendations, Coopwood was discharged back to the jail for reasons unclear from the record. (*Id.* at PageID. 253.)

10

On November 8, 2017, Coopwood was readmitted to the hospital after reporting that she had not felt her baby move in four days.  (*Id.* at PageID. 264-266.)  Dr. Haddad recommended that the physicians administer another dose of antipsychotic medications, concluding that only after receiving this treatment could Coopwood be competent to consent to medical procedures.  (*Id.* at PageID. 267.)  The physicians eventually induced labor, but the baby was stillborn. (*Id.* at PageID. 264-273.)  The hospital discharged Coopwood back to the Jail on November 9. (*Id.*)

While Coopwood was in custody at the Jail, a grievance policy was in effect to process and resolve inmate complaints.  (ECF No. 5-2 at PageID. 30.)  As summarized in the Jail's "Inmate Handbook," the grievance policy requires the filing of an initial grievance form and, if unsatisfied with the response, an appeal. (ECF No. 5-4.)  First, the detainee is required to fill out a specified form "within ten (10) days from the date the alleged incident or violation occurred."  (*Id.* at PageID. 56-58.)  A prisoner "may submit a Wayne County Jail grievance to any staff member."  (*Id.* at PageID. 57.)  In turn, the Jail "will provide a written answer to [the] grievance within fifteen (15) business days of receiving [the] grievance [or] may inform [the inmate] that it is extending the deadline to respond."  (*Id.*)  The detainee may then appeal within ten days of receiving the grievance response, and appeals are answered within fifteen business days.  (*Id.*)  The policy does not

provide any other grievance recourse after the ten-day period ends and does not provide extensions or allow late filings.  (*See id.* at PageID. 56-58.)

Citing to the declaration of Cierra Crawford, the Director of Internal Compliance for the Wayne County Sheriff's Office, Defendants contend that every inmate is provided a copy of the "Inmate Handbook" that describes the grievance process.  (*See* ECF No. 5 at PageID. 23-24 (citing ECF No. 5-2 at PageID. 30).) Crawford does not in fact state this in her declaration (*see* ECF No. 5-2), although the Jail Operations Manual does provide: "As part of the orientation process, classification staff shall explain the grievance process to all inmates, provide them with an Inmate Rules and Regulations Handbook, and have the inmate sign the Grievance Process Form" (ECF No. 5-2 at PageID. 33).  Defendants offer no evidence that this procedure was followed with respect to Coopwood.  (*See generally* ECF No. 5); *see also Coopwood*, 74 F.4th at 423 (observing that Crawford "noticeably made no assertion that her office has a record of Coopwood signing the Grievance Process Form that should have been provided to her at intake").  Defendants do present evidence to support their assertion that the Jail has no record of a grievance being filed by Coopwood.  (ECF No. 5-2 at PageID. 30.)

Coopwood "does not recall receiving any forms related to time constraints." (ECF No. 16-2 at PageID. 115.)  She contends that she "asked to speak to whoever was in charge, and they wouldn't let [her]."  (*Id.*)  She explained that "after

additional complaints [she] did fill out some type of paper, which [she] believe[s]

they told [her] was a grievance form." (*Id.*)  She cannot "remember the name of the

officer or guard who took her complaint, but it was to a [sergeant] on the 5th floor

with the Psychiatric Unit."  (*Id.*)

## IV.    Applicable Law and Analysis

### A.    An Inmate's Individual Incapacity Can Render the Administrative Remedies Unavailable

The Sixth Circuit found it unnecessary to address Coopwood's argument that

her mental illness rendered the Jail's grievance process unavailable to her because

it otherwise found summary judgment unwarranted.  *Coopwood*, 74 F.4th at 423-

24.  The Sixth Circuit observed, however:  "Our circuit has no published opinion

on whether the availability of remedies under the PLRA requires an analysis of an

inmate's individual capacities, but we have, in unpublished opinions confronted the

issue."  *Id.* at 424 (citing *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622 (6th Cir.

2011); *Williams v. White*, 724 F. App'x 380, 383 (6th Cir. 2018); *Doss v. Corizon

Med. Corp.*, No. 21-1423, 2022 WL 1422805 (6th Cir. Mar. 15, 2022)).

In *Braswell*, where the inmate was eventually diagnosed with schizophrenia,

the Sixth Circuit found that there was "substantial doubt as to whether [the inmate]

was mentally capable of filing a grievance" and "even if [the inmate] had been

capable of filing a grievance, there is doubt as to whether [the inmate] sufficiently

understood the detention facility's grievance system or had access to the necessary

form." 419 F. App'x at 625 (alterations added). The court explained that "one's personal inability to access the grievance system could render the system unavailable." *Id.* (quoting *Days v. Johnson*, 322 F.3d 863, 867 (5th Cir. 2003), overruled on other grounds by *Jones v. Bock*, 549 U.S. 199 (2007)). The *Braswell* court concluded that the inmate was "required to exhaust only those procedures that he is reasonably capable of exhausting." *Id.*; *see also Peterson v. Hall*, No. 2:11-cv-15154, 2012 WL 3111632 (E.D. Mich. July 2, 2012), *report and recommendation adopted*, 2012 WL 3111629 (E.D. Mich. July 31, 2012) (finding a genuine issue of material fact as to whether exhaustion was excused because the plaintiff was illiterate or mentally ill.)

However, in another unpublished opinion, the Sixth Circuit stated that "there is no mental capacity exception to the PLRA." *Williams v. White*, 724 F. App'x 380, 383 (6th Cir. 2018). In *Doss*, the court found that the mental capability argument was forfeited but distinguished the facts from *Braswell* by finding "no evidence that [the inmate] has any mental-acuity issues that prevented him from filing a grievance, and he did in fact pursue the grievance process." 2022 WL 1422805, at *2. The undersigned is more persuaded by *Braswell*.

This is because, in its brief analysis of whether there is a mental-capacity exception to the PLRA, the *Williams* panel relied exclusively on the Supreme Court's finding in *Ross* that the unwritten "special circumstances" exception is

14

inconsistent with the text and history of the PLRA.  *Williams*, 724 F. App'x at 383

(citing *Ross*, 578 U.S. at 635).  However, as *Ross* went on to find, there is a

"textual exception" to exhaustion:  "An inmate . . . must exhaust [only] available

remedies[.]"  *Ross*, 578 U.S. at 642.  Instead of viewing mental capacity as an

extra-textual exception not permitted by the statute, *Braswell* examines the

inmate's mental capabilities within the analysis of availability provided by the

PLRA.  *Braswell*, 419 F. App'x at 625.  Unlike *Williams,* which only examined

availability from the perspective of whether an ordinary prisoner can understand

the grievance procedure, *Braswell* approached the availability of the remedies as

an inmate-specific investigation.  This approach is consistent with how the Sixth

Circuit evaluated availability in this case—albeit with respect to other factors that

rendered the process unavailable to Coopwood.  *See Coopwood*, 74 F.4th at 422-

23.

Further, as the Sixth Circuit pointed out on appeal here, *Braswell* is

consistent with the approach taken by several other circuits.  *Id.* at 424 (collecting

cases); *see Smith v. Andrews*, 75 F.4th 805, 809-09 (8th Cir. 2023) (concluding that

"administrative remedies are "unavailable" to an inmate under the PLRA when (1)

the inmate was unable to file a timely grievance due to physical or mental

incapacity; and (2) the administrative system's rules do not accommodate the

condition by allowing a late filing"); *Smallwood v. Williams*, 59 F.4th 306, 314 (7th

Cir. 2023) (explaining that "when assessing whether the grievance process could have been understood by a particular prisoner, the inquiry must consider individual capabilities" because the Circuit "ha[s] made it clear that an administrative remedy that is available to the majority of inmates may not be available to those who are illiterate, blind, or whose individual circumstances otherwise render the procedures unavailable to them"); *Rucker v. Giffen*, 997 F.3d 88 (2nd Cir. 2021) (holding that "administrative remedies are 'unavailable' when (1) an inmate's failure to file for the administrative remedy within the time allowed results from a medical condition, and (2) the administrative system does not accommodate the condition by allowing a reasonable opportunity to file for administrative relief"); *Lanaghan v. Koch*, 902 F.3d 683, 688-89 (7th Cir. 2018) (concluding that the plaintiff's physical limitations made the grievance remedy unavailable to him while explaining that "a grievance procedure can be unavailable even in the absence of affirmative misconduct" and that availability requires "a fact-specific inquiry"); *Weiss v. Barribeau*, 853 F.3d 873 (7th Cir. 2017) (holding that, "[g]iven the questionable state of [the inmate's] mental stability at the time, we cannot have any confidence that administrative remedies actually were available to him"); *Eaton v. Blewett*, 50 F.4th 1240, 1245 (9th Cir. 2014) (finding "[t]he critical question" to be "whether there is something in [the inmate's] particular case that made the existing and generally available remedies effectively unavailable to [him]") (second

alteration in original and quotations omitted); *Days v. Johnson*, 322 F.3d 863, 867

(5th Cir. 2003), overruled on other grounds by *Jones v. Bock*, 549 U.S. 199 (2007)

(holding that "one's personal inability to access the grievance system could render

the system unavailable"); *Johnson-Ester v. Elyea*, No. 07-cv-4190, 2009 WL

632250 (N.D. Ill. Mar. 9, 2009) (finding that courts should consider "both physical

and mental infirmities as possible reasons that generally available administrative

remedies might be 'unavailable' in a particular instance").

**B.    Coopwood's Mental Condition Rendered the Jail's Administrative Remedies Unavailable to Her**

As in *Braswell*, there is no genuine issue of material fact regarding

Coopwood's mental incapacity to comply with the grievance procedures.  The

medical records offered by Defendants and cited by Coopwood demonstrate that

Coopwood suffered impaired cognitive function due to mental illness.  (ECF No.

18-2; ECF No. 18-3; ECF No. 20-1.)  Coopwood had a documented mental health

condition and symptoms that required her to take anti-psychotic medication.  (ECF

No. 16-4 at PageID. 129.)  Coopwood claims she stopped taking her medication

before arriving at the Jail on August 16, 2017.  (ECF No. 16-2 at Page ID. 114.)

She was not given antipsychotic medication until October 19, 2017.  (ECF No. 18-

3 at PageID. 229-34.)  The hospital's psychiatrist deemed Coopwood incompetent

to make medical decisions while unmedicated.  (ECF No. 18-3 at PageID. 251.)

17

The Jail's Inmate Handbook and Grievance Policy required Coopwood to file her grievance in the ten days following the alleged August 17 incident. (ECF No. 5-4 at PageID. 56-58.) Even if the grievance process was explained to Coopwood and she received the Inmate Handbook, Coopwood suffered cognitive impairments that rendered her unable to understand the process. During this ten-day period, and well beyond, Coopwood was not given treatment, though she previously was diagnosed with "bi-polar disorder" and "bi-polar schizophrenia." (ECF No. 16-2 at PageID. 114-115.)

As a result of being unmedicated, Coopwood claims she was "unable to sleep, had difficulty eating, and as such, [her] anxiety greatly worsened, and [she] had a great difficulty understanding events and [her] reading comprehension may [have] become affected." (*Id.*) The Jail's contracted medical evaluators, though aware of Coopwood's mental health history and that it contradicted Coopwood's self-reporting, did not require an evaluation by a licensed psychiatrist or recommend any antipsychotic medication. (ECF No. 18-2 at PageID. 157.) She did not receive any mental health treatment until her encounter with Dr. Haddad on October 19, 2017. On that date, Dr. Haddad concluded that Coopwood had been "psychotic for [an] unknow[n] period of time." (ECF No. 18-3 at PageID. 230.)

Significantly, Coopwood was found "guilty but mentally ill" on the charge arising from the stabbing death of her mother on August 13—four days before she

18

claims Watts assaulted her.  (*See* ECF No. 5-3 at PageID. 39; ECF No. 20-2 at

PageID. 329.)  This outcome required a finding that Coopwood "lacked the

substantial capacity either to appreciate the nature and quality or the wrongfulness

of . . . her conduct or to conform . . . her conduct to the requirements of the law."

Mich. Comp. Laws § 768.36.

**V.     Conclusion**

As the Sixth Circuit found, there is a genuine dispute of fact as to whether

Jail staff thwarted Coopwood's attempts to exhaust her administrative remedies.

(ECF No. 30.)  Defendants and Coopwood dispute whether Jail staff provided

Coopwood with the details of the grievance procedure during the intake and

whether they refused to provide Coopwood with the necessary grievance form.

(ECF No. 5-2 at PageID. 30; ECF No. 16-2 at PageID. 115.)  However, an

evidentiary hearing is not necessary to resolve whether Jail staff thwarted

Coopwood's attempts at exhaustion because Defendants fail to refute the evidence

regarding Coopwood's mental incapacity to comply with the available

administrative remedies.

As discussed previously, exhaustion under the PLRA is similar to other

threshold issues of judicial administration that the court may resolve without a jury.

*Lee v. Willey*, 789 F.3d at 677.  As also previously discussed, the court must

conduct a hearing to "resolve all genuine issues of material fact related to the

exhaustion of administrative remedies." *Alexander*, 2018 WL 8345148 at *6.
Nevertheless, Defendants have not presented evidence to refute that Coopwood
lacked the mental capacity to comply with the available administrative remedies.

Yet, it was Defendants' burden to show by the preponderance of the
evidence that the administrative remedies were available to Coopwood, as failure
to exhaust is an affirmative defense. For the reasons discussed, they have not met
this burden. There remains no genuine dispute of material fact for the Court to
decide at an evidentiary hearing.

Accordingly,

**IT IS ORDERED** that Defendants' motion for evidentiary hearing is
**DENIED**. The case will proceed on the merits.[4]

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: July 13, 2024

---

[4] Simultaneously with the entry of this Opinion and Order, the Court will be setting
a scheduling conference in this matter. While the Court is aware that Defendants'
motion for partial dismissal remains pending (ECF No. 36), it plans to decide the
motion promptly. And because the motion does not address all of Coopwood's
claims, even if granted, a scheduling order will be needed. The Court does not
wish to further delay moving this matter forward.